# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-60556

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

CHARLES R BARLOW

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, DENNIS, and CLEMENT, Circuit Judges:

WIENER, Circuit Judge:

A jury convicted defendant-appellant Charles Barlow ("Barlow") of (1) attempting to persuade or entice a person he believed to be a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), and (2) sending obscene material to a person he believed to be younger than 16 years old in violation of 18 U.S.C. § 1470. Barlow now appeals, bringing three claims of error. We find no error and affirm.

## I. FACTS AND PROCEEDINGS

### A. Facts

In August 2006, Barlow, then 39 years old and living in Lumberton, Mississippi, spied an online picture and profile of a teenage Mississippi girl

named Rebecca and emailed her, introducing himself and asking how old she was. Rebecca responded that she was 14 years old, though in reality, she was a middle-aged, married paralegal from Dixie, Mississippi, named Ginny English ("English").[1]  English freelanced for law enforcement by posing online as an underage girl to attract potential sex offenders.

Rebecca and Barlow then began an online relationship that continued sporadically for most of the next year.  They chatted mostly via Yahoo! Messenger, an instant messaging service, but also by email.  At Barlow's instigation, the conversations became explicit immediately, and over time Barlow emailed Rebecca multiple pornographic pictures, including of his erect penis.  He repeatedly asked her to send explicit pictures of herself, occasionally asserting that he was a photographer who could set her on the path to a lucrative modeling career if she would comply.  Although the online conversations were usually about sex, they sometimes covered more mundane topics, such as Rebecca's need to register for eighth-grade classes, her mother's monitoring of her computer use, and Barlow's job on an off-shore oil rig.

During their correspondence, Barlow attempted to set up a meeting with Rebecca, but none transpired until the summer of 2007, when they agreed to meet in a state park south of Hattiesburg, Mississippi.  Barlow told Rebecca that he would bring his foster sons to the park and that if she would meet him there, they could go for a walk and, then, while the boys ate lunch, Barlow would show her the "inside of his tent."  When Rebecca agreed, Barlow asked her not to wear underwear to their rendezvous and sent her more explicit pictures,  apparently intended to be instructional.

On the appointed day, Barlow arrived at the park before the 11 a.m. meeting.  Near 10:30 a.m., FBI Special Agent Matthew Campbell, who was

---

[1] This opinion will refer to "Rebecca" and "English," as the context requires.

overseeing the operation, pulled up close to Barlow's parked car in order to read the license plate (obscured by a boat trailer Barlow was pulling) and verify Barlow's identity. Seeing the agent, Barlow gathered his foster sons and left the park. Arrested shortly thereafter, Barlow told agents that he had gone to the park to meet a 15-year-old[2] girl named "Becki" but left because he did not want to be there when she arrived. Agents found Barlow's laptop in his car and on it some remnants of the chats he had had with Rebecca.

## B. Proceedings

Barlow was charged with (1) attempting to violate 18 U.S.C. § 2422(b) by attempting to knowingly persuade, induce, entice or coerce a person he believed to be younger than 18 years old to engage in sexual activity that would be illegal under Mississippi law,[3] and (2) violating 18 U.S.C. § 1470 by using a means of interstate commerce, *viz.*, the Internet, to knowingly send obscene material to a person he believed to be younger than 16 years old. Barlow mounted no defense and did not take the stand during the two-day trial. The jury convicted him on both counts; he was sentenced to 188 months in prison.

Barlow appeals, asserting that (1) there was insufficient evidence that he took a substantial step toward enticing or persuading a minor to engage in sexual activity, (2) the government failed to lay a proper foundation for the Yahoo! chat log prior to its admission into evidence, and (3) the government failed to prove that his acts had an interstate nexus.

## II. STANDARD OF REVIEW

Barlow styles his first claim, insufficiency of the evidence, as an appeal from the denial of his motion at trial under Federal Rule of Criminal Procedure

---

[2] Over the course of the year, Rebecca had had a birthday.

[3] Mississippi law prohibits sexual contact with a minor who is at least 14 but younger than 16, if the person is more than 36 months older than the minor. MISS. CODE ANN. § 97-3-95 (2007).

29. We review the denial of a Rule 29 motion de novo.[4] In reviewing the sufficiency of the evidence underlying a Rule 29 denial, we look to "whether a rational jury could have found the defendant guilty beyond a reasonable doubt."[5]

At trial, Barlow objected to neither the authentication of the chat log nor the alleged failure to establish an interstate nexus, as a result, we review his second and third claims for plain error.[6] To show plain error, an appellant must demonstrate that the error was "clear or obvious" and that it "affected [his] substantial rights."[7] Even if he meets this tough standard, we will not reverse unless "the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings."[8]

## III. DISCUSSION

### A. Sufficiency of the Evidence

To prove attempt, the government must demonstrate that the defendant (1) acted with the culpability required to commit the underlying substantive offense, and (2) took a substantial step toward its commission.[9] Here, the underlying offense is the violation of § 2422(b). Thus the government had to prove beyond a reasonable doubt that Barlow intended to "persuade[], induce[], entice[], or coerce[]" a person whom he believed to be a minor into illegal sexual

---

[4] *See, e.g.*, *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007).

[5] *Id.*

[6] *See, e.g.*, *Foradori v. Harris*, 523 F.3d 477, 508 (5th Cir. 2008) (failure to timely object to testimony at trial results in plain error review on appeal).

[7] *United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006).

[8] *United States v. Alvarado-Santilano*, 434 F.3d 794, 795 (5th Cir. 2005).

[9] *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001) (addressing attempt to violate 18 U.S.C. § 2422(b)).

contact and took a substantial step toward that persuasion or enticement.[10] We have defined a "substantial step" as "conduct which strongly corroborates the firmness of defendant's criminal attempt."[11] "Mere preparation" is not enough.[12]

Barlow asserts that because he left the park before Rebecca was to arrive, he never took a substantial step toward completing the attempt. Barlow essentially asks us to ignore the eleven months leading up to the meeting at the park, an invitation we decline. Barlow spent nearly a year pursuing Rebecca. He attempted to persuade her to send him explicit photographs. He promised her a modeling career, to spoil her rotten, to make her feel good, and to treat her like a queen. He suggested meetings and phone calls. And finally, he loaded his foster sons into the car with him and drove to the state park and waited for her arrival. Not until he noticed another adult in the parking lot did Barlow abandon the attempt. But his early departure does not undo the substantial steps he had already taken. We hold that there was ample evidence for a jury to conclude that Barlow took a substantial step toward persuading a person he believed was a minor to engage in illegal sexual activity.

## B. Foundation

Barlow next contends that the chat log should not have been admitted because the government failed to properly authenticate it. Although Barlow protests that this could mean the transcript of the chats was altered, he does not contend that it actually was altered. Evidence must be authenticated "to

---

[10] 18 U.S.C. § 2422. The statute also requires that the defendant used a means of interstate commerce in violating the statute, discussed *infra*. To be clear, the statute does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that contact. *See, e.g., United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (§ 2422 criminalizes "persuasion and the attempt to persuade, not the performance of the sexual acts themselves").

[11] *Farner*, 251 F.3d at 513.

[12] *United States v. Mandujano*, 499 F.2d 370, 373 (5th Cir. 1974).

support a finding that the matter in question is what its proponent claims."[13] This is not a burdensome standard.[14] Testimony by a witness with knowledge that the "matter is what it is claimed to be" can be enough to prove the thing's authenticity.[15] The ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury.[16]

At trial, English testified that the transcripts fairly and fully reproduced the chats between her (posing as Rebecca) and Barlow. English, as the other participant in the year-long "relationship," had direct knowledge of the chats. Her testimony could sufficiently authenticate the chat log presented at trial, and it was not plainly erroneous to admit the transcript on this basis.[17]

## C. Interstate Nexus

Finally, Barlow contends that the government failed to establish the requisite interstate nexus to support either charge. The testimony of a single FBI agent, with no apparent firsthand knowledge, that Yahoo! had no servers

---

[13] FED. R. EVID. 901.

[14] *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (authentication "merely requires some evidence" in support (quoting *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989))); *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) ("The bar for authentication of evidence is not particularly high."); *Jimenez Lopez*, 873 F.2d at 772 ("This Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence.").

[15] FED. R. EVID. 901(b)(1).

[16] *United States v. Smith*, 481 F.3d 259, 265 (5th Cir. 2007) (a break in the custodial chain goes to the weight of the evidence, not its admissibility).

[17] Nor are we the first court to find testimony of the other participant in an online chat can authenticate the conversation's transcript. *See*, *e.g.*, *Gagliardi*, 506 F.3d at 151; *see also United States v. Tank*, 200 F.3d 627, 630-31 (9th Cir. 2000) (testimony of another chat room user that he recorded the chats and printed them out, and that the printouts appeared to accurately represent the chats, was sufficient to establish prima facie showing of authenticity); *United States v. Simpson*, 152 F.3d 1241, 1249-50 (10th Cir. 1998) (combination of identifying information given by user in the chat and corroborating evidence found in defendant's home near his computer sufficient to authenticate chat log).

in Mississippi was inadequate to establish that the emails and pictures traveled in interstate commerce, according to Barlow's argument.

Barlow misunderstands the statutes. Neither § 2422(b) nor § 1470 requires proof of travel across state lines. Section 2422(b) requires the *use of* "any facility or means of interstate or foreign commerce." Section 1470 requires the same with the added specific that the obscene material be "transfer[red]" using that "facility or means." In 2009, it is beyond debate that the Internet and email are facilities or means of interstate commerce.[18] And, it is undisputed that Barlow conducted his entire affair with Rebecca online — that is, using the Internet — and sent her obscene material by email. The interstate nexus requirements of the statutes were satisfied irrespective of the agent's testimony.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[18] Should there be any doubt, we have held that transmitting photographs via the Internet is "tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce." *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (considering 18 U.S.C. § 2251, which contains a more involved interstate transmission requirement than either statute under consideration here) (internal quotation marks and citation omitted).